We go back to the year 2001. There was a trial at the beginning. The trial for patent infringement. The plaintiff is CPI, the defendant is St. Jude. One of St. Jude's defenses is obviousness, invalidity based upon obviousness. This defense is based upon two references, Deniston and Dugan, and a number of other references. The case goes to trial. The jury comes back with a verdict. The jury says that Claim 4, which was the claim at issuance before us now, has not been proved invalid. Therefore, the jury's determination is that the claim is valid. Then, a motion for JMLL is filed, and the district judge grants JMLL with respect to Deniston and Dugan. CPI now appeals to this court. This court then reverses. The court says there was substantial evidence to support the jury verdict, and therefore the JMLL on Deniston and Dugan must be reversed. Now, this court does something else. There was a question about Claim 4, which was a method claim. One of the steps the district court had interpreted as being a 112 paragraph 6 step, and then it accorded this a narrow construction because of this 112 paragraph 6. CPI said that that was wrong, raised that issue on appeal. This court reversed. This court then said that is not a 112 paragraph 6 step. So, this court then remanded the case to the district court, and what was left for the district court to do was it had to take that step that was now no longer a 112 paragraph 6 step, and construe it, and determine if there was infringement, and then have damages. Isn't the question whether anticipation is now before us? I'm sorry, whether anticipation is... Is properly before us. Yes, yes. It's properly decided by the district court. Yes. And that goes back to what this court did before. It certainly does. And this panel will decide, with the help of the author of the opinion, what we did before as a court. Now, the court said in its second order, new claim construction may raise directly new issues such as, which is not an exclusive term, such as whether the claims are supported, which is a 112 issue. Yes. As I say, that such as is not an exclusive term. The next sentence says all of the other issues, we'll find and decide, but it says all of the other issues on appeal. Anticipation wasn't on appeal before, was it? Well, the substance of the appeal had in it the exact anticipation defense that was asserted on remand. And the reason why that is so is because, and this was clear in the court's decision on the petition for writ of mandamus, the court said on remand what St. Jude can try is any defense that was occasioned by the broader construction. So St. Jude had to jump over that hurdle, the broader construction. Now, having the broader construction changed nothing at all. Because if you put yourself in CPI's position for the trial court, CPI said that 112 paragraph 6 step was wrong. CPI always asserted the broader construction. When it came time to argue invalidity below the first time, CPI always used that broader construction. So when this court said that the broader construction is the correct construction and sent it back to the district court, it changed absolutely nothing with respect to invalidity. You're saying anticipation isn't a new issue? Not at all. In fact, this court ruled against it. The anticipation issue as structured on remand could have been brought up below. It was the exact same thing, and it falls within the rubric that epitome is the anticipation of obviousness. For example, Deniston and Dugan, they could have made all their arguments, and we just focus in on determining a condition of the heart. That's the 112 paragraph 6 step. As I say, CPI always said it was the broader construction. If St. Jude had won it, it could have brought that motion for anticipation, or they could have called it obviousness. And on the 112 paragraph 6 step, they could have said, CPI has already told us to use the broader construction for that. And so nothing changed when it gets sent back. And as a result, they were precluded under the mandate rule from coming back to try to argue something different, even though they put a different name on it, calling it anticipation rather than obviousness. It was exactly the same issue that had been contested below. And indeed, they could have brought that up below. And so changing the construction from narrower, the 112.6, to broader, not 112.6, changed nothing below, which means that issue wasn't directly related to what had happened on appeal. And as a result, they should be precluded from arguing that. Now, the court did one other thing. The district court had said that if any invalidity decision by the district court was reversed by this court, the district court grants a new trial. And the district court had also held best mode invalidity, obvious invalidity, and he wanted to grant a new trial if any of those were reversed. This court, on the first appeal, said no. And they reversed that. They vacated that. So that's another reason why, you know, if they'd had that new trial, then of course they could raise new issues. But this court specifically held they weren't entitled to that new trial ruling from the district court. And as I say, in the petition for writ of mandamus, this court stated, I think quite properly, that if St. Jude wants to raise a new defense down below, it must show that it was necessitated by what this court did on the first appeal. And this court changed nothing on the first appeal with respect to invalidity, because CPI had always argued the broader construction. Now, when we return for remand, St. Jude, unmindful of the mandate rule, just decided that it would call its arguments with respect to Deniston and with respect to Dugan anticipation rather than obviousness. But it's the same wine in a new bottle. It really didn't change at all. Now, even if you were to say, but let's consider what the district court did. The district court had a summary judgment motion before it. That meant that all inferences had to be resolved in favor of the non-moving party. St. Jude says anticipation for Deniston. CPI then says, well, Deniston doesn't show programming, which was a required element. CPI then cites the expert testimony of St. Jude's expert, who is Dr. Muran. The district court tries to distinguish Dr. Muran as saying he was talking about something else, even though Dr. Muran's words were, Deniston does not describe a programming operation. That's correct. And he said it doesn't describe a programming operation. That's from A4163. The district court said, well, that's ambiguous. I'm not going to follow it. What the district court didn't recognize is that on summary judgment, if there was any ambiguity there, it had to be resolved in favor of the non-moving party, CPI. Same thing with respect to cardio vision. In fact, with respect to cardio vision, it's even worse. CPI again said on Dugan, which is cardioversion, Dugan doesn't have cardioversion. That's a required element. The court had construed cardioversion as having non-pacing pulses. Clearly, Dugan didn't have that. And they said, and besides, CPI said, your expert said that Dugan doesn't have cardioversion. And the court again looked at that and says, oh, there's an ambiguity there, and I'm not going to follow it. But again, any ambiguity has to be resolved in favor of CPI as a non-moving party. So even if you consider what he did on summary judgment, it's reversible because of that. And in fact, this court specifically considered Dugan and said that Dugan did not cardiovert as required by Claim 4 because he used non-pacing pulses. Now, we get to the other issues that we submit that this court should consider if the court remands it to the district court, as we suggest definitely should be done in this case for the reasons I've just mentioned. Again, unmindful of the mandate rule, when the case goes back on remand, St. Jude raises four new inequitable conduct offenses. None of them have anything to do with changing the claim construction. St. Jude doesn't even assert that. And the court's view is that as long as I don't take an issue which is exactly the same as an issue decided by this court in the first appeal, then they can consider it. But that's really not the law. Of course, the new trial that the district court had granted was denied, was reversed by this court. The law is that you cannot use, and this is the Seventh Circuit language, the accident of a remand to raise new issues that you should have raised previously. The case was tried in Indianapolis. Indianapolis is in the Seventh Circuit. The law in the Seventh Circuit is if you had an issue and you didn't raise it the first time, then you can't use the accident of a remand to raise it the second time. And so they can't do that with respect to the inequitable conduct offenses. Some of the inequitable conduct offenses already may be out because the parties entered into a stipulation whereby anything relating to the expert witness Borland now no longer can be an inequitable conduct offense. But to the extent there are any other inequitable conduct offenses, they have nothing to do with the broader claim construction, and we submit that this court should instruct the district court that those can't be raised. Now, the other thing that St. Jude did was it raised a new damages defense. And again, the Seventh Circuit specifically says you can't use the accident of a remand to then raise this new defense. And we cited a case from this court, Tronso v. Biomet, that had the exact same facts. In Tronso v. Biomet, there was a remand. On the remand, the plaintiff wanted to assert a new damages theory called the wrongdoer theory. The district court said, no, you could raise that the first time. You can't just use the remand to raise a new defense. And so they're following the general mandate rule, which is we have a mandate where you have a decision by an appeals court for a particular purpose that you can't just say, oh, now's my opportunity to raise new defenses. But you're talking about a new defense for an issue that was not previously decided. Does the Seventh Circuit rule that you're telling us about apply to that as well? Yes, it does. Because a party has an obligation to place all of its defenses in the first case. And I think it relates not so much to the decision by the appeals court, but the fact that you have to raise all your defenses. Otherwise, if you don't, they're waived. And I don't think it really depends upon what the appeals court does. Because in, I think, the main case we cited from the Seventh Circuit, they just didn't raise the issue on appeal. And so the appeals court never had it. But yet they held that a new issue could not be raised. Then we suggested in our appeal, and so for that reason, we say they cannot raise this new damages defense having nothing to do with claim construction. And damages were raised the first time, only they were raised with respect to another patent. There were two patents in the first trial. The evidence on damages was the same with respect to both of them. There wasn't any difference. So the issue of damages was made and actually was decided in the first case. In fact, the jury came back with a verdict. That verdict was, the judge vacated that verdict, the jury verdict on JMLL, and that was not appealed. So the issue of damages was tried at the first trial with respect to both patents. We've asked the court to remand this case to a different judge. The reason is that the Seventh Circuit, and again, this court follows the procedural rules of the Seventh Circuit, and this is a procedural rule. The Seventh Circuit has a rule that is not a rule that you find in all of the other circuit courts, and their rule is called Rule 36. But if we didn't do it before, why should we do it now? Because circumstances have changed. Because now, adding to what you did before, the district court has now taken the same Dugan and Denniston references that you said provided substantial evidence to support the jury's verdict, which resulted in reinstatement of the jury's verdict, and has now said that those same two references now render these claims invalid, and for no additional reason. Even if that's valid, that's not necessarily a reason to determine a reassignment. Well, I think you may be speaking of reassignment apart from Rule 36, because I think Rule 36 casts a different glow on reassignment. In the usual case, you know, someone asks you to reassign, you have to decide, you have to look for bias. In the Seventh Circuit, it's a very different situation. The Seventh Circuit has said that when you have a remand, you have a conflict in values. On the one hand, you've got a district judge who knows everything about the case. He's lived with this case for a number of years. He's obviously the one who is most best equipped to handle it. He can do it the most efficiently. Why in the world would you give it to someone else? But no, the Seventh Circuit says, on the other hand, this judge's involvement in this case that has made him so knowledgeable has probably given him perhaps a mindset or a bias. And then the Seventh Circuit weighs the two. And this is the Seventh Circuit just making a decision. And they're saying, you know, we think that for our circuit, which we can control with our rules, we think that it's better that it goes back to a new judge, even though that new judge doesn't have any of the experience that the old judge has. And it's because of this likely mindset or bias. And we think that because the judge has had this case for so long and has, you know, twice held that patent invalid, once over the jury's verdict, and then again on summary judgment where he didn't even resolve ambiguities in favor of the non-moving party, that that is more than sufficient under the specific Rule 36 in the Seventh Circuit to say, you know, in this case, based upon everything we have, we're going to follow the default rule of the Seventh Circuit. In the other circumstances where you don't have that rule, you might decide otherwise, as you suggest. But I would suggest where you do have Rule 36, even though you decided to the contrary the last time, that it should be decided. It really should go to a different judge. Okay, Mr. Musso, we're out of time. We'll save you a bit of time. Are there any more questions for Mr. Musso? Thank you. Thank you, Your Honor. Mr. Perry. Thank you, Your Honor. May it please the Court. After a dozen years of litigation, the resolution of this case comes down to one limitation of one claim of one patent. Specifically, whether the capable of being programmed element was disclosed in the prior art to Denniston. If I may, I'd like to start first with the merits of that question and then turn to the procedural question involving the mandate rule and so forth. Yeah, but don't we get to the procedure first to see whether we get to anticipation? Your Honor, I will happily take a cue from the bench and reverse that order. Mr. Neustadt and CPI suggest that the anticipation and obvious defenses collapse into one another in this case. That is false, wrong, unprecedented, and unlawful. The Patent Act contains two separate defenses. Section 102 for novelty speaks to anticipation. Section 103, the very first sentence says, even if you're not covered by 102, you may nevertheless be able to show that the differences between your patent and the prior art would have been obvious to a person skilled in the art. But then this case goes the other way. Your Honor, it only goes the other way because of the erroneous claim construction. Let me take a very strong, sharp, and concise issue with a statement by Mr. Neustadt. He said the prior claim construction changed nothing on anticipation. That is wrong. For a claim to be anticipated by the prior art, a single reference must teach every element in the claim. That is black-letter law. Under the previous claim construction, this claim was interpreted to require PDF, probability density function, circuitry to determine the condition of the heart. No prior art, including Deniston, disclosed the use of PDF circuitry for the determining limitation. Therefore, there was no prior art that disclosed every limitation of this claim. St. Jude had no anticipation defense available to it. We raised it as a defense in the answer after discovery, and after that claim construction, we dropped that defense because in light of that construction, we could not responsibly assert that a single reference taught every element in that claim. On appeal, this Court reversed that claim construction and held that the determining function does not require 112.6, does not pick up the PDF, and for the first time at that stage in this litigation, the Deniston reference then disclosed every element of the prior art. In the previous appeal, CPI argued that if the Court were to reverse the claim construction, it ought to just enter a judgment of infringement and be done with the whole case. St. Jude, we argued in our briefs, no, no, no, no. If we have a new claim construction, we need to go back to argue the validity questions that will be raised in light of that construction based on the specification and otherwise. And this Court, in its opinion, specifically referred to those specification-based defenses, which we did raise based on the written description requirement, the enablement requirement, but also did not foreclose any others. 102 was never before this Court because it was not presented on the record. We only had available to us in light of the previous claim construction a 103 combination argument. And that's very important. Remember, Section 103 says that the accused infringer may argue that the differences between the prior art and the patent would have been obvious to a person skilled in the art. How about our order, though, that says all other issues were finally decided? Your Honor, the only validity question as to this that this Court decided was that an erroneously instructed jury looking at a wrongly construed patent had sufficient evidence to decide that it was not invalid for obviousness. That stands as the law of this case, but that's as far as it goes. The jury construction was wrong. The claim construction was wrong. This Court certainly did not decide that the prior art did not disclose every element of the claim. And it's very important here to focus on the difference between Section 103 obviousness and Section 102 anticipation. Under Section 103, even if a combination of the prior art discloses every element of the claim, the jury may find the claim not to be obvious in light of the secondary considerations identified in Graham and reconfirmed by the Supreme Court with KSR. Really? Yes, Your Honor. Isn't that the difference between lack of novelty and obviousness? With obviousness, you can show these added factors, but if it's old, if it's in the prior art, that's it. Your Honor, in a combination claim, which is what we were constrained to argue before, that we had to put two or more pieces of prior art together, the secondary considerations may always be taken into account to overcome the showing of what was in the prior art. And CPI argued that very strongly in this case to the jury that even if the prior art showed what our experts showed it to say, that the secondary considerations should control. And this Court, Your Honor, and this appears at page A155 of the appendix, and this is very important, this Court said that that is a question of fact, and there was substantial evidence, including the licensing and the sales to other and the skepticism, the secondary factors identified in Graham, from which a jury could have concluded non-obviousness. We don't know exactly what the jury found, but the jury may well have found that every element was in the prior art, but that the secondary considerations were sufficient to render a verdict of non-obviousness, and this Court said that was a question of fact. Anticipation, Your Honor, has no secondary considerations. There are no Graham factors in an anticipation case. But anticipation is a question of fact. Your Honor, it's a question of fact as to what appears in the prior art. That goes to the merits, and I'd be happy to turn to that. And so why wasn't anticipation presented to that jury? Because, Your Honor, there was no single piece of prior art that anticipated every reference to this claim. That's a powerful admission, if I can call it that. When you say there's no single piece of prior art, you're asking us now to find otherwise. I'm sorry, Your Honor, if I misspoke. Under the previous claim construction, the determining step required the use of PDF circuitry. The dentist in reference did not teach the use of PDF circuitry, therefore it did not teach every element under the prior claim construction. On appeal, CPI argued that that construction was error. This court agreed, and on remand, the district court reconstrued that element, as CPI urged, to not require the use of PDF, to say that any method of determining the condition of the heart satisfied that element. Dentist didn't satisfy every other element, and we have argued throughout this case that dentist didn't satisfy every other element. Therefore, it was this court's changed claim construction that gave rise to an anticipation defense for the first time. An anticipation defense only is available if a single reference teaches every element of the claim. That claim construction stood in the way of the anticipation defense until it was reversed by this court. It became available to St. Jude only on remand from this court. It was not foreclosed by the mandate. We did present it. CPI complained. We brought that specific issue up on a written mandate, as they did. The court denied that. This is the first time in this litigation that any trial fact, any judicial officer, has determined whether a single piece of prior art contains every element of the properly construed claim. The properly construed claim. And in this court, Your Honor, CPI does not challenge the claim construction, so the only question on the merits is whether dentist discloses every element of claim 4 as construed by the district court. And on that, Your Honor, Mr. Neustadt had about 30 seconds to say, and for good reason, there is no real argument. This is a summary judgment case. I think that's important to recall. St. Jude moved for summary judgment of anticipation and put in a very detailed explanation of how each element was met in 15 numbered, detailed paragraphs with specific reference to the facts, prior patents, and the expert testimony in this case. In response, CPI responded with 97 words. Your Honor, it's in the record. A6330 and A6334 is the entirety of CPI's summary judgment response on anticipation. It is two paragraphs. It is five sentences. It is 97 words. It is completely inadequate to overcome the factual showing that we made on summary judgment. How many words was the Gettysburg Address? Your Honor, the Gettysburg Address was very concise, but it actually had something to say, unlike CPI's response here. CPI's response here boils down to one sentence, which says that Dr. Moran, St. Jude's expert, testified in response to a leading question on cross-examination that Dentiston doesn't disclose the programming element. Let's break this down into pieces. The programming element says that the device must be capable of being programmed to undergo a single or multimode operation. That element was construed by the district court in ruling the CPI as an appeal, and the court said, quote, the plain meaning of this language is that the device can be programmed to treat any particular arrhythmia using either one mode of operation or more than one mode of operation. On remand, St. Jude put in a summary judgment motion with supporting evidence showing how the device, the Dentiston device and this device, could be programmed to perform those precise things. The Dentiston device, it's at page A, 5746 through 50. It's columns 3, 4, 7, 11, and 12 of the patent describe how, for example, if the device detects an asystole, that is, the heart stops beating, it will respond with two therapies. First, it will pace the heart for 15 to 20 seconds. If that starts the heart beating again, all well and good, we're done. And if the heart doesn't start beating again, then the device will shock the heart with a cardioversion shock. That is precisely the therapy, the combination of mode of therapies described in the 288 patent in columns 19 and 20 at page A, 133 of the record. And St. Jude's expert testified to this precise equivalence between the two patents and said, quote, the 288 patent does precisely what Dentiston does. It applies a pacing pulse when it detects asystole and attempts that multiple times, and if it fails to elicit a response, it applies a shock, end quote. CPI didn't dispute that evidence. That is a factual explanation derived from the patent itself as to how these two devices, the device described in Dentiston practices the method claimed in the 288 patent. There is absolutely no factual dispute on this summary judgment record. Judge Newman, you're right. It is a question of fact as to what is in the prior art, but CPI utterly and wholly failed to take issue with what is in the prior art. In this court, their argument boils down to one argument with two flavors. First, they say Dentiston can't be programmed at all. Well, that's just not true. Dentiston describes the lead that goes from the device into the heart, makes clear that it can be used for pacing, can also be used for shocking, makes clear the circuitry with switches, including an AND gate, by which both functions can be turned on and off. That is programming, and the district court correctly so recognized they have no evidence to the contrary. Their fallback argument is, well, okay, Dentiston can be programmed, but he can't be programmed externally. That is, a doctor can't tell the device what to do once it's implanted in the body. We agree with that, Your Honors. Dentiston can't be programmed externally. But so what? The 288 patent does not require external programming for this claim. This claim only requires that the device be capable of being programmed. In a separate claim, Claim 7, later on in the chain of independent claims, CPI specifically claimed a device, or a method for a device, that can be externally programmed. They very well knew the difference at the time between programming and external programming, drew two separate independent claims, one for programming and one for external programming, have not asserted the external programming claim. We are left with a programming claim. This is the end of the case. The patent claims a method that was described in Dentiston. They have no answer to that. They have no answer on summary judgment. They have no answer in their brief. They have no answer in this court. They want to get out of that invalidity, the clear, undisputed, irrefutable, and adjudicated invalidity of this patent by relying on this procedural question of the mandate rule. As I've indicated, and I'll reiterate, the mandate rule is no barrier here. This court did not decide a one-on-two question because it was not available to St. Jude. It was not presented to this court. The jury has not decided the one-on-two question. The only person that has decided the one-on-two question is Judge Hamilton, and he got it right based on CPI's rather abject failure to dispute the summary judgment record in this case. Again, in the record, A6330 and A6334, that is the entirety of the record that they properly put in. St. Jude, on the other hand, put in much more. Today, Mr. Neustadt varied up the argument slightly and said, well, there's an ambiguity. The expert testimony at least creates an ambiguity, so the tie goes to the opponent of summary judgment. Your Honor, that argument wasn't any good to start with, and it was destroyed by KSR. The final section of KSR, Section 4, where the Supreme Court talks about the appropriate use of expert testimony in making validity determinations, makes clear that a bare conclusory statement by an expert as to an ultimate question does not create a genuine dispute of fact. Even if CPI's expert had testified, quote, Deniston is not capable of being programmed, end quote, and had said nothing more than that, had just recited the bare item of the claim with no facts to support it, that would not have created a genuine issue of fact under KSR. CPI doesn't even have their own experts saying that. In fact, they have our experts saying that in response to a cross-examination question that was clearly limited to external programming, as the District Court, who observed the testimony, pointed out. The other issues, Your Honor, as the clock runs down, and we'll even cover it in the brief, unless the Court has further questions, we would submit them. Thank you. Thank you. Mr. Perry, can you start? Thank you, Your Honor. First of all, as to whether or not anticipation was available earlier to St. Jude, of course it was. St. Jude, all they had to do was come into court before Judge Hamilton and say, we've got Deniston, we've also got Dugan on anticipation, go through the evidence, just as they did on summary judgment, and when they came to determining a condition with a hard step, all they had to say is, CPI admits that you should adopt the broader construction from that.  In fact, it's like the best form of evidence because the other side has already admitted it. So that broader construction was available to them in the District Court. They chose not to use it. We have always asserted the broader construction. We obviously couldn't assert the broader construction for infringement and then go to a narrower construction for invalidity. So that argument was available to them. They failed to take advantage of it. They were precluded from raising it the second time around. Now, getting to summary judgment, this is beyond the mandate. Here is exactly what the CPI said in 6330. Dr. Miran, St. Jude's expert, admitted in trial that Deniston was not capable of being programmed as required by claims one and four. And then we cited, Deniston camping program externally correct? Answer, Deniston does not describe a programming operation. That's correct. So how can you get better evidence to oppose a summary judgment motion that the admission of the other side's expert that the art that they're asserting doesn't have one of the required elements? And the exact same thing happened with respect to cardioversion. And this is from that same page, 6330. St. Jude's experts, Dr. Miran and Dr. Rickards, acknowledged at trial that neither Dugan nor Baker taught cardioversion as required by claim four. And then they cited the quote from Dugan. So with the cardioversion, you have exactly the same thing. How can you have stronger evidence against summary judgment than the other side's expert admitting that one of the elements that they say is present in the prior art is not present? Then, last point. My colleague did not raise 271F, which is also, and so I'm not going to raise it either. And I presume he's not going to come back and raise it. Because I'm not going to raise it, because he didn't raise it. So that will be submitted on that. But if he does come back and there will be 271 left, I'd let him have it too. Okay. Thank you, Mr. Neustadt and Mr. Perry. The case is taken under submission.